UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.                                    Case Nos.    3:02cr94/RV/CJK
                                                   3:12cv129/RV/CJK

GUERLY ALEXIS
_____/

## ORDER AND REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (docs. 229, 230).  The Government has filed a response (doc. 246) and Defendant has filed a reply (doc. 250).  Defendant also filed a motion to amend (doc. 257) which the court denied (doc. 258).  His motion for reconsideration of that order is now pending (doc. 259). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND[1]

Defendant Guerly Alexis and his two brothers were charged in a five count indictment with conspiracy to possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of crack cocaine (Count One), and four substantive counts of possession with intent to distribute various controlled substances on August 19, 2002 and August 22, 2002 (doc. 2).  Defendant's brothers were tried in May of 2003 and are currently serving terms of imprisonment (docs. 58, 59, 63).  The marshal did not arrest Defendant until 2010 (*see* doc. 171).[2]  Defendant waived a detention hearing on May 17, 2010 (doc. 180) and on June 15, 2010 he entered a plea of guilty to Count One of the indictment (docs. 190, 191).

In the original Presentence Investigation Report ("PSR"), Defendant was held accountable for the equivalent of 1,757,285 kilograms of marijuana which corresponded to a base offense level of 38  (doc. 194, PSR ¶¶ 34, 44).   After a two level adjustment for obstruction of justice due to Defendant's flight to his native country of Haiti to avoid prosecution, and a three level adjustment for acceptance of responsibility, Defendant's total offense level was 37 (PSR ¶¶ 48–53).  Defendant had a criminal history category of VI (PSR ¶ 68).   The applicable guidelines range was 360 months to life imprisonment.

At sentencing, Defendant objected to the amount of drugs attributed to him, noting that he had withdrawn from the conspiracy, although his brothers continued with drug trafficking activity (doc. 217 at 4).  In response, the court stated that if it

---

[1]Detailed statements of facts describing the offense conduct are set forth in Defendant's Presentence Investigation Report (doc. 200), and will be set forth herein only as necessary.

[2]The PSR reflects that Defendant was taken into federal custody in Haiti and transported to the United States (doc. 194, PSR ¶ 4).

considered only the weight that Defendant acknowledged and admitted, this quantity was sufficient to sustain the offense level attributed to him. The court reasoned that sustaining Defendant's objection would not impact the sentence (*id*. at 8). Counsel then presented an objection to the obstruction of justice enhancement, which the court sustained (*id*. at 9–13). Defendant's revised offense level was 35, thus reducing the applicable guidelines range to 292 to 365 months (*id*. at 13; *see also* doc. 200, Revised Final PSR ¶¶ 48–53, 98). The court sentenced Defendant to a term of 330 months imprisonment, at the mid-point of the guidelines range.

Defendant appealed, and appointed counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). The Eleventh Circuit found, after an independent review of the entire record, that there were no issues of arguable merit, and it affirmed Defendant's conviction and sentence on November 30, 2011. Defendant timely filed his original motion to vacate on March 12, 2012[3] (doc. 226 at 13). His amended motion, in which he raises four grounds for relief, is currently pending before this court. The Government opposes the motion in its entirety.

LEGAL ANALYSIS

General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its

---

[3] A pro se inmate's pleading is deemed filed at the time it is placed in the prison mailbox or delivered to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule").

jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  *Nyhuis*, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.

*Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998);
*McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is
"'available' on direct appeal when its merits can be reviewed without further factual
development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055).
Absent a showing that the ground of error was unavailable on direct appeal, a court
may not consider the ground in a section 2255 motion unless the defendant
establishes (1) cause for not raising the ground on direct appeal, and (2) actual
prejudice resulting from the alleged error, that is, alternatively, that he is "actually
innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).  To
show cause for procedural default, a defendant must show that "some objective factor
external to the defense prevented [him] or his counsel from raising his claims on
direct appeal and that this factor cannot be fairly attributable to [defendant's] own
conduct." *Lynn*, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of
counsel can constitute cause.  *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct
appeal and are properly raised by a § 2255 motion regardless of whether they could
have been brought on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 503
(2003); *see also United States v. Franklin*, 694 F.3d, 1, 8 (11th Cir. 2012).  In order
to prevail on a constitutional claim of ineffective assistance of counsel, a defendant
must demonstrate both that counsel's performance was below an objective and
reasonable professional norm and that he was prejudiced by this inadequacy.
*Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S.
362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).
*Strickland*'s two part test also applies to guilty pleas.  *Lafler v. Cooper*, 132 S.Ct.

1376, 1384 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial. *Id* at 1384–85 (quoting *Hill*, 474 U.S. at 59). A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice. *Pericles v. United States*, Case No. 12-14505, 2014 WL 2198514 (11th Cir. May 28, 2014) (quoting *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no

competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are

insufficient to satisfy the *Strickland* test.  *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (citing *Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  *Chandler*, 218 F.3d at 1313.  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"  *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence.  *See Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer

or evidentiary support"); *Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada*, 941 F.2d at 1559; *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  *Lynn*, 365 F.3d at 1239.

<u>Ground One–Failure to Assert Speedy Trial Violation</u>

Defendant first contends that trial counsel was constitutionally ineffective because he failed to assert a violation of Defendant's right to a speedy trial based on the eight year delay between his indictment and his arrest and prosecution.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  This right "is as fundamental as any of the rights secured by the Sixth Amendment."  *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967).  In the seminal case of *Barker v. Wingo*, 407 US 514 (1972), the Supreme Court established a four factor test that courts must use to analyze constitutional speedy trial challenges.  The four factors are: (1) the length of delay; (2) the reason for the delay; (3) a defendant's assertion of his right; and (4) prejudice to the defendant.  *Barker*, 407 U.S. at 530; *United States v. Knight*, 562 F.3d 1314, 1323 (11th Cir. 2009).  Unless the delay is "presumptively prejudicial" under the first factor, the district court need not consider the other

factors.  *Id*. (citing *United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999)).  A delay approaching one year after indictment is "presumptively prejudicial."  *Knight*, 562 F.3d at 1323 (citing *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997)); *Doggett v. United States* , 505 U.S. 647, 652 n.1, 658 (1992).  The parties in this case agree that the eight year delay between Defendant's indictment and arrest constitutes presumptive prejudice that triggers a need for this court to analyze the remaining factors.  *See United States v. Villareal*, 613 F.3d 1344 (11th Cir. 2010).  With respect to the remaining factors, as the Supreme Court stated in *Barker*, "these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."  407 U.S. at 533.

The second factor focuses upon the reason for the delay.  The Government bears the  burden to establish valid reasons for the delay.  *Villareal*, 613 F.3d at 1351 (citing *United States v. Ingram*, 446 F.3d 1332, 1337 (11th Cir. 2006)).  An inability to arrest or try a defendant because of the defendant's own evasive tactics constitutes a valid reason for the delay.  *Villareal*, 613 F.3d at 1351 (citing *Ingram*); *United States v. Bagga*, 782 F.2d 1541 (11th Cir. 1986).  A key factor in the delay in Defendant's case, obviously, was Defendant's choice to return to his native Haiti shortly after the indictment, leaving his common-law wife and three children in Florida.  In his memorandum in support of this § 2255 motion, Defendant claims that "the Government may have been [ ] negligent in seeking him, which denied [him] the right to be aware of his indictment" (doc. 230 at 7).[4]  Defendant also asserts that the

---

[4]Defendant's after-the-fact assertions with respect to his knowledge of the pending indictment are suspect.  The PSR states "In August 2002, after witnessing the executed search warrant, and learning of the pending federal indictment, the defendant fled the country" (doc. 200, PSR at ¶ 40).  Defendant did not object to this statement at sentencing, although he did object to the resulting obstruction of justice enhancement (doc. 217 at 3–4, 8, 9–10).  Failure to object to factual findings

cause of the delay "was primarily the Government's responsibility and none of his own" (doc. 230 at 9).

Defendant rests the bulk of his argument upon what he characterizes as the Government's "weak" attempts to inform him about the indictment or pursue him, and he cites several cases in support of his position.  In *United States v. Ingram*, the court found a two-year post-indictment delay intolerable when an ATF agent, who knew where defendant lived and worked, and also knew that defendant had a brother in law enforcement,  made only minimal efforts to contact him, and failed to advise defendant of a pending indictment.  *Ingram*, 446 F.3d at 1339–40.  Similarly, in *United States v. Mendoza*, the Government was deemed negligent in its efforts to communicate with a defendant who had fled the country when it failed to contact him via the defendant's wife or other relatives, as it had done during the pendency of the investigation leading to the indictment.  *United States v. Mendoza*, 530 F.3d 758, 763 (9th Cir. 2008).   Finally, in *Doggett*, the Court noted that for six years the Government's investigators "made no serious effort to test their progressively more questionable assumption that [the defendant] was living abroad, and, had they done so, they could have found him within minutes" as they did when the Marshal's Service ran a simple credit check and discovered Doggett living under his own name in the United States.[5]   505 U.S. at 652–53.   Although the Government's efforts to

---

in the PSI is deemed to be an admission of those facts.  *See United States v. Williams*, 438 F.3d 1272, 1274 (11th Cir.2006).  Former counsel's affidavit also reflects that Defendant fled the country with knowledge of the pending indictment (doc. 246, exh. D).  While not dispositive, this reflects counsel's understanding of the circumstances of his client's case.

[5]The Court also noted that although "the Government's lethargy may have reflected no more than Doggett's relative unimportance in the world of drug trafficking, it was still findable negligence"  *Doggett*, 505 U.S. at 653.

locate Defendant in this case were perhaps less than Herculean, the case is nevertheless distinguishable from the cases upon which Defendant relies.

The Government has submitted investigative reports detailing some of the efforts made to locate Defendant.  According to these reports, law enforcement learned that Defendant was "likely" in Haiti in October of 2003 (doc. 246, exh. C at 3).  In March of 2005, however, it received information from the Crestview, Florida Police Department that Defendant was still in the area, traveling from either Tallahassee or Miami (*id*. at 5).  In August of 2005, the Government again obtained information suggesting that Defendant was in Haiti (*id*. at 7).  There are no reports for another four years, but the investigative report from September of 2009 reflected that Defendant was one of the Most Wanted Fugitives from the Northern District of Florida.  It also stated that law enforcement had received information that Defendant was in Haiti and that he was involved in narcotics trafficking and distribution on an international level (*id*. at 10).  The marshal's service worked with its field office in Jamaica to apprehend Defendant (*id*.).  The last report reflects that in March of 2010, a CI confirmed that Defendant was "alive and well" after the earthquake in Haiti, and this CI was working to ascertain Defendant's exact address (*id*. at 12).  Throughout these reports, Defendant's case was classified as "pending." The Marshal did not stop the search.  Agents periodically engaged in surveillance of Defendant's relatives and former associates, sought search warrants, interviewed various individuals, ran Defendant's photo on a "crime stoppers" television program, and ran database checks to try to locate any information that would help ascertain Defendant's whereabouts (doc. 246, exh. C).  There is no indication that, despite the lack of success in finding Defendant, the USMS ever intended to abandon its quest to locate him.

Further, once law enforcement confirmed Defendant's whereabouts, returning him to U.S. soil was not a simple matter.  The extradition treaty between the United States and Haiti provides that neither country is obligated to extradite its own citizens, and, even if Defendant's citizenship were in question, narcotics offenses are not among the enumerated extraditable offenses (doc. 246, exh. B, at 3).  The Government is not required to pursue extradition if it appears that to do so would be futile.  *See United States v. Bagga*, 782 F. 2d 1541, 1543 (11th Cir. 1986); *United States v. Woods*, 851 F. Supp. 1564, 1568 (S.D. Fla. 1994); *see also Montalvo v. United States*, 862 F. 2d 425 (2d Cir. 1988).  The details surrounding Defendant's arrest and return to the United States are not in the record.  The PSR reflects that Defendant was taken into federal custody in Haiti and transported to the Southern District of Florida in April of 2010, which was within one month of the final investigative report (doc. 200, PSR, ¶ 4).  Thus, once Defendant's whereabouts were clear, the Government appears to have acted promptly, and the undersigned cannot conclude based on the record before the court that the Government's efforts to locate Defendant were not reasonable, nor that any nefarious motive figured into the delay. *See Bagga*, 782 F.2d 1541.

The third prong of the *Barker* analysis considers Defendant's assertion of his right to a speedy trial.  Defendant did not raise his right to a speedy trial at any point during these proceedings, until such purported right became the basis of the issue asserted in this habeas matter.  The Supreme Court has held that if a defendant is aware of his indictment prior to his arrest and fails to assert this right, the fact would weigh heavily against him. *Doggett*, 505 U.S. at 653.  Although Defendant maintains he did not know of the extant indictment, and only left the country to avoid possible

repercussions from his brothers' drug dealing activities (*see* doc. 250 at 9), counsel states in his affidavit that he did not file a speedy trial motion because Defendant fled the country with knowledge of the pending indictment (doc. 246 at exh. D).

The fourth prong of the *Barker* test considers prejudice to Defendant.  The Supreme Court has recognized three forms of prejudice that can result from post-indictment delay: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) "the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence."  *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532) (internal quotations omitted). "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' " *Id.* (quoting *Barker*, 407 U.S. at 532).  The impairment of a defendant's ability to present a defense due to the erosion over time of exculpatory evidence and testimony may be difficult to prove. *Doggett*, 505 U.S. at 655; *Barker*, 407 U.S. at 532.  The *Doggett* court noted that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or identify.  *Doggett*, 505 U.S. at 655.

The only specifics Defendant offers with respect to the delay are that the delay "deprived him of more than a crime free and changed (mature) personality. [Defendant] had started a new family in his country of birth and being deprived of standard employment he was self-employed"  (doc. 230 at 9).  If, as Defendant claims, he did not know of the pending indictment, then his apparent assertion of anxiety and concern carries no weight.  Additionally, it is not clear how a pending indictment in the United States could have deprived Defendant of "standard employment" as he claims.

In at least one respect, the delay in Defendant's apprehension inured to his benefit.  The trial testimony from Defendant's co-defendants and brothers' trial was available to either party for use in preparing its case, and from Defendant's perspective, there was little question about the strength of the Government's case. This trial testimony also played a significant role in guiding the sentence Defendant ultimately received.  Perhaps because of this, Defendant essentially concedes that he would not be able to prove "particularized trial prejudice" (doc. 250 at 10).

In sum, despite the long delay in bringing Defendant to trial, the Government's efforts to locate Defendant were not unreasonable or designed to prejudice Defendant, and Defendant has not shown prejudice.  Thus, after weighing the four *Barker* factors as applied to the particular facts of this case, the undersigned concludes that no speedy trial violation could have been made out.  Counsel is not constitutionally ineffective under *Strickland* for failing to preserve or argue a meritless claim. *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v.*

*Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).   Therefore, counsel was not constitutionally ineffective for his failure to argue that there was a speedy trial violation in this case, and Defendant is not entitled to relief.

Ground Two–Failure to challenge drug quantity

Defendant contends that counsel was constitutionally ineffective because counsel did not challenge the quantity of drugs attributable to Defendant at sentencing.   Defendant's premise, however, that counsel in fact made no challenge to the quantity of drugs is mistaken, and Defendant fails to show prejudice.

At Defendant's rearraignment, the Government summarized the testimony of numerous cooperating witnesses who testified at Defendant's brothers' trial that they purchased varying quantities of controlled substances, including kilogram quantities of cocaine, from one or more of the three men during the time period covered by the indictment (doc. 216 at 17–20).   Defendant initially denied that he had been in a conspiracy with his brothers, instead maintaining that he acted alone, but ultimately agreed after hearing the court's explanation of the meaning of "conspiracy" (*id*. at 21–22).   In response to questioning from the Government, Defendant admitted that he had been involved in the distribution of over five kilograms of cocaine  (*id*. at 29).

At sentencing, even though the defense had made no formal objection to the drug quantity attributed to Defendant, this issue became a focal point of the hearing (doc. 217).  Defendant and his counsel both told the court that Defendant did not agree with the quantity of drugs for which he was held accountable (*id.* at 4–5).  The district judge, who had presided over Defendant's brothers' trial some years earlier and heard the Government's summary of relevant evidence presented at that trial, ultimately resolved Defendant's "objection" by stating that  it would "note on the record that you disagree with the weights and that, in your opinion, the weights are overstated, but that you also acknowledge that the weights that you acknowledge and admit should be there are sufficient to result in the same offense level so that it has no effect on the offense level as calculated" (*id.* at 8).

To the extent Defendant argues that counsel should have challenged the district court's consideration of evidence presented at the co-conspirators' trial in determining the quantity of drugs attributable to him and the appropriate sentence, he cannot show prejudice.  The district court may go beyond a defendant's admissions and base its factual findings on evidence presented at trial, undisputed statements in the PSR, or evidence presented at sentencing, among other things.  *United States v. Louis*, 559 F.3d 1220, 1224 (11th Cir. 2009); *United States v. Smith*, 480 F.3d 1277, 1281 (11th Cir. 2007); *United States v. Chau*, 426 F.3d 1318, 1323 (11th Cir. 2005). In fact, the Sentencing Guidelines require the sentencing court to consider "relevant conduct," which means both the offense of conviction and conduct that is part of the same course of conduct or common scheme or plan.  *Edwards v. United States*, 523 U.S. 511, 514 (1998) (citing U.S.S.G. § 1B1.3(a)(1), (a)(2)).  Thus, because a challenge to the district court's consideration of evidence beyond Defendant's

admissions would have been futile, counsel's performance was not constitutionally deficient for his failure to raise such a challenge.

Defendant also argues that counsel was constitutionally ineffective because he failed to challenge the issue of drug quantity on appeal. Due process of law entitles a convicted defendant to effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The Sixth Amendment right to counsel does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so. *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000); *Knowles v. Mirzayance*, 556 U.S. 111, 126–127 (2009); *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Heath v. Jones*, 941 F.2d 1126, 1130–31 (11th Cir. 1991). A *Strickland* claim based on counsel's failure to raise a particular appellate point may be advanced, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective. *Smith*, 528 U.S. at 288 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")). In this case, there appears no viable basis for a challenge to the district court's finding on drug quantity. Furthermore, after counsel filed an *Anders* brief, the Eleventh Circuit conducted the required independent review of the entire record and found no issues of arguable merit (doc. 225 at 4). Defendant is not entitled to relief on this ground.

Ground Three–Failure to challenge statute of limitations

Defendant asserts that counsel should have raised the statute of limitations as a defense to the charges against him.  Defendant's apparent belief that this would have been a viable defense is mistaken.

The applicable statute of limitations for a conspiracy offense is five years.  18 U.S.C. § 3282; *United States v. Harrison*, 329 F.3d 779 (11th Cir. 2003).  The Government satisfies the requirements of the statute of limitations if it alleges and proves that the conspiracy continued into the limitations period.  *Harrison*, 329 F.3d at 783.  Therefore, the conduct involved in the conspiracy must have occurred within the five year period preceding the date of the indictment.  The grand jury returned the indictment on September 17, 2002 (doc. 2).  According to the indictment, the conspiracy occurred between May 1, 1997 and August 22, 2002 (*id*. at 1).  During Defendant's plea colloquy, the court noted that there was no statute of limitations problem (doc. 216 at 15, 20).  Defendant admitted, under oath, his involvement in the drug conspiracy from 1996 through 1998, which was within the limitations period (doc. 211 at 14–15).  The Government also summarized testimony from the trial of Defendant's brothers supporting its position that Defendant had been involved in dealing multiple kilogram quantities of cocaine in 1998 and thereafter (*id*. at 16–20). There was no basis for counsel to make a statute of limitations objection, and he was not constitutionally ineffective for his failure to raise a groundless point.

Ground Four–Failure to provide competent advice at plea stage

Defendant contends that counsel failed to provide good advice during the plea stage of his case, and that had he done so, Defendant would have been "reluctant to enter a guilty plea" (doc. 230 at 16).  Defendant identifies four alleged failings of

counsel.  First, he asserts that counsel failed to inform Defendant that he would be subjected to career offender punishment under the sentencing guidelines.  There is no factual basis for this claim, as Defendant was not sentenced as a career offender.

Second, Defendant asserts that counsel failed to advised him that he would be held accountable for the actions of co-defendants and other relevant conduct due to his plea to a conspiracy charge.  Essentially, Defendant's claim is that he did not realize the extent of his sentencing exposure.  During the plea colloquy, Defendant was reminded that, as set forth in his Plea and Cooperation Agreement, he was facing a sentence of from ten years to life imprisonment (doc. 216 at 9).  Additionally, even if counsel did not explain that Defendant would be held accountable for drugs distributed by his co-conspirators, the district court addressed this very issue at the rearraignment.  The court specifically advised Defendant in explaining the definition of a conspiracy that "the law holds all of the partners responsible for the actions of the other partners to the extent that they were committed in furtherance of that conspiracy during the course of it or may be reasonably foreseeable" (*id*. at 13). Defendant stated that he understood (*id*.).  Thus, Defendant was aware of this fact before entering his plea, and he has shown neither prejudice, nor that his complaint is even based in reality.

The other two alleged "failings" of counsel were that counsel did not advise Defendant that he had two potential defenses:  either the Speedy Trial violation or the statute of limitations.  As discussed above, Defendant's analysis of these issues is incorrect, and counsel was not constitutionally ineffective for his failure to advise Defendant to pursue these defenses in lieu of entering a plea.  Defendant is not entitled to relief on this ground.

<u>Defendant's Motion for Reconsideration</u>

Over two years after filing his initial motion, Defendant filed a motion to amend his pending § 2255 motion in which he sought to add an additional claim (doc. 257).   The undersigned denied the motion, finding that Defendant's proposed amended claim did not relate back to the claims in his pending motion (doc. 258). Defendant subsequently filed a motion for reconsideration in which he claims that the court's prior order was in error and offers additional argument in support of his position (doc. 259).

In Defendant's proposed motion to amend, he asserts that counsel failed to investigate alibi witnesses (doc. 257 at 3).   The proposed alibi witnesses were Defendants' brothers and co-defendants Junior Alexis and Lesley Alexis, who purportedly would have testified that at no time during 1997 through 2002 did Defendant enter into an illegal agreement with either of them to distribute cocaine, cocaine base, or other controlled substances (doc. 257, exhs. A, B).  This new claim of ineffective assistance of counsel is factually unrelated to the ineffective assistance of counsel claims he raised in his amended motion.  As such, it does not relate back, despite Defendant's assertion that the proposed amendment only serves to "cure deficiencies and expand the facts" in his amended § 2255 motion.  *See Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000).

Furthermore, consideration of the proposed amendment would not alter the outcome of these proceedings. The affidavits of Defendant's brothers contradict both the testimony of multiple witnesses at their own trial, as summarized by the Government at Defendant's rearraignment (doc. 216 at 17–20), and Defendant's admission by virtue of his guilty plea that he was involved in a conspiracy.

Defendant has waived all non-jurisdictional defects in the proceedings against him by admitting his guilt, and he will not now be heard to claim for the first time, years after his sentencing, that he is innocent.  *See United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) (quoting *United States v. Jackson*, 659 F.2d 73, 74 (5th Cir.1981)); *see also United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir.2003) ("Generally, a voluntary, unconditional guilty plea waives all non-jurisdictional defects in the proceedings.").

Finally, the court cannot credit Defendant's conclusory assertion that he would not have pleaded guilty but for counsel's alleged ineffectiveness.  Defendant's assessment of counsel's ineffectiveness is based largely on an erroneous analysis of applicable law, and the record reflects that at his rearraignment he repeatedly expressed his intent to "get the case over with" (doc. 216 at 8, 10).

Defendant's motion for reconsideration of the court's order denying his motion to amend will therefore be denied.  There was no error in the court's prior order, and even if the motion to amend were granted, Defendant's proposed additional claim would not afford him relief.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

### Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

Defendant's motion for reconsideration (doc. 259) is **DENIED**.

And based on the foregoing, it is respectfully **RECOMMENDED**:

1. Defendant's amended motion to vacate, set aside, or correct sentence (doc. 229) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 7th day of July, 2014.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### <u>NOTICE TO THE PARTIES</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**